IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br>vs<br>SAMUEL GABRIEL GONZALEZ<br>Defendant | CRIMINAL 05-0250CCC |

**O R D E R**

  Defendant Samuel Gabriel González, who stands charged in a one-count indictment with the knowing transportation of illegal aliens in violation of 8 U.S.C. §1324(a)(1)(A)(ii), claims that the stop of his vehicle by U.S. Border Patrol agents flouted the Fourth Amendment and, consequently, seeks suppression of statements made by him and two material witnesses after said stop (see **docket entry 23**). The United States has opposed defendant's suppression motion (**docket entry 28**), claiming that under 8 U.S.C. §1357 the Border Patrol agents had statutory authority to stop defendant without a warrant and that, in any event, they had reasonable suspicion that defendant's vehicle may contain illegal aliens which allowed them to stop the vehicle and make inquiries of its occupants.

  The matter was referred to U.S. Magistrate-Judge Camille L. Vélez-Rivé who, after holding a hearing where the two Border Patrol agents testified, rendered a Report and Recommendation (R & R) (**docket entry 32**) where she concluded that while the statutory authority invoked by the government to justify the stop contravened the Fourth Amendment, the totality of the circumstances present at the time provided the agents with reasonable suspicion to make a Terry[1] stop under established legal principles. The Magistrate-Judge thoroughly discussed all the circumstances deemed relevant, e.g. defendant's proximity to the border, the characteristics of the area, usual patterns of traffic on the particular road, the agents' previous experience with alien traffic, information about recent illegal border crossings

---

[1] See Terry v. Ohio, 392 U.S. 1, 21 (1968).

in the area, aspects of the vehicle itself, behavior of the driver, and the number and behavior of the passengers. R & R, at pp. 16-20. See also United States v. Brignoni-Ponce, 422 U.S. 873, 884-885 (1975). Upon finding that "the Border Patrol Agents had reasonable suspicion to stop defendant's pickup," R & R, at p. 21, she recommended that defendant's motion to suppress be denied.

  Defendant has filed objections to the Report and Recommendation (**docket entry 38**), where he contests the final conclusion reached by the Magistrate-Judge. In doing so, defendant avers that "most of the factors relied on by the agents in attempting to justify the stop applied neutrally to every vehicle on [the same road where defendant was stopped] on the night in question," and that "the remaining factors that could be specifically directed to [defendant's] vehicle and person are insufficient to form the basis of a particularized and reasonable suspicion of illegal alien transportation." Objections, at p. 4.

  Having reviewed defendant's motion to suppress, the government's response, the Magistrate-Judge's Report and Recommendation and the transcript of the suppression hearing, and in light of the applicable legal principles, we agree with the Magistrate-Judge that the totality of the circumstances gave the agents reasonable suspicion that defendant's vehicle contained illegal aliens justifying an investigatory stop in order to dispel their beliefs. After all, it is established law that "when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion." Brignoni-Ponce, 422 U.S. at 881. "Each case must turn on the totality of the particular circumstances." Id., at p. 885, n. 10.

  The officers' observations here reasonably led to such a conclusion: they had received information that a yawl landing had occurred earlier that date and, in fact, had arrested several illegal aliens in the same area where they later established the surveillance that lead to their intervention with defendant; they knew by experience that when there are landings in a particular area the usual movement at night is that of scouts or of persons that would serve as transports for the aliens; while conducting their surveillance, they spotted defendant's vehicle close to midnight when there was barely any traffic on that particular road; defendant's vehicle slowed down right when he saw their patrol car but sped again when the agents turned their vehicle's lights on and started to pursue it; defendant's vehicle, a pick-up with a small cabin, had

two passengers in addition to the driver that looked "kind of cramped",[2] while all the other cars they had observed during their surveillance had only one occupant or had been identified as corresponding to "lookouts;" and all the occupants of defendant's vehicle avoided looking at the agents and appeared very rigid and stiff.

The analysis of the different factors which defendant would like us to conduct--by labeling most of them as "neutral" for they applied to all the vehicles on the particular road where the agents conducted the surveillance and focusing just on the factors that specifically applied to defendant's vehicle, behavior and appearance, which he mostly classifies as constituting innocent behavior--is simply erroneous. A similar method of analysis, where a reviewing court evaluated and rejected most of the relevant factors in isolation from each other - has been rejected by the Supreme Court for not taking into account the "totality of the circumstances." As the Court explained:

> The [Court of Appeals] appeared to believe that each observation by [the agent] that was by itself readily susceptible to an innocent explanation was entitled to "no weight." Terry, however, precludes this sort of divide-and-conquer analysis. The officer in Terry observed the petitioner and his companions repeatedly walk back and forth, look into a store window, and confer with one another. Although each of the series of acts was "perhaps innocent by itself," we held that, taken together, they "warranted further investigation." 392 U.S., at 22, 88 S.Ct. 1868. See also [United States v.] Sokolow, [490 U.S. 1,] 9, 109 S.Ct. 1581 [(1989)] (holding that factors which by themselves were "quite consistent with innocent travel" collectively amounted to reasonable suspicion).

U.S. v. Arvizu, 534 U.S. 266, 274-275 (2002). We are simply not persuaded by defendant's simplistic conclusion that "there was nothing suspicious about three males riding in a pickup." Objections, at p. 13. Given the totality of the circumstances which the agents confronted the night of the events, and in view of "their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person,'" Arvizu, 534 U.S. at 273 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)), their stop of defendant's vehicle was reasonable under the Fourth Amendment.

For the reasons stated, the Magistrate-Judge's Report and Recommendation (**docket entry 32**) is ADOPTED. Accordingly, defendant's Motion to Suppress (**docket entry 23**) is DENIED.

---

[2] See Transcript (docket entry 37), at p. 68.

The case will be set for trial by separate Order.

SO ORDERED.

At San Juan, Puerto Rico, on December 14, 2005.

S/CARMEN CONSUELO CEREZO<br>United States District Judge